[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff brings this action for damages against the Defendants claiming in the First Count of the Amended Complaint dated December 13, 1994 that the Plaintiff entered into a Contract for the purchase of certain real estate from the Defendants and that in accordance with the terms of said Contract the Plaintiffs were required to ". . . correct the high radon reading to reduce said reading to .4PCI-L . . .". The Plaintiff further alleges that at the closing of title in said matter, on October 17, 1990, the Defendants delivered radon test results to CT Page 5942 the Plaintiff (through the Plaintiff's attorney in fact) which test results indicated that the airborne radon levels had been lowered to an acceptable level. The Plaintiff further alleges that at the said closing of title the Defendants "withheld the test (results) for the radon in the water" and that some four years later, the Plaintiff discovered as a result of further testing that the radon level in the household water was at a "dangerously high level".
In the said First Count, the Plaintiff alleges that the Defendants were aware of the high level of radon in the water at the time of the said closing of title, withheld from the Plaintiff the test results which indicated a high level of radon in the water, and that the Defendants failed to remedy the radon in the water to an acceptable level in accordance with the terms of the Contract. As a result thereof, claims the Plaintiff, the Defendants have breached their contract with the Plaintiff.
In the Second Count of said Amended Complaint, the Plaintiff alleges that the Defendants ". . . fraudulently concealed from the Plaintiff the existence of their (sic) cause of action for fraud, in that, they did not disclose to them (sic) the initial reports concerning the radon in the water . . .". The Plaintiff further asserts that the Defendants "committed fraud upon the Plaintiff in that they ". . . wantonly and maliciously withheld a material fact from the Plaintiff, namely, the unusually high amount of radon in the water". The Plaintiff claims that as a result of the "Defendants' wanton and malicious withholding of a material fact from the Plaintiff concerning the radon in the water", the Plaintiff has suffered and will continue to suffer from emotional distress from the threat that she may contract cancer. On the Second Count of the said Amended Complaint, the Plaintiff claims damages, punitive damages and attorney's fees.
The Defendants have denied the Plaintiff's allegations with respect to the claim that the Defendants delivered to the Plaintiff's attorney-in-fact at the time of closing a copy of the radon test results for the airborne radon and withheld the test results for the waterborne radon levels. The Defendants further deny that they breached any of the terms of the real estate Contract and they deny that the subject real estate contract required the Defendants remedy any waterborne radon problems. The Defendants further deny any and all allegations of fraudulent concealment and the claim that they ". . . wantonly and maliciously withheld a material fact from the Plaintiff, namely, CT Page 5943 the unusually high amount of radon in the water.
A trial to the court was held in this matter on April 9, 1999 and as a result of the court's consideration of the testimony of the witnesses and evidence at trial, the court's consideration of the deposition testimony of the individual who conducted the radon tests, Mr. Meehan, which deposition testimony was read into the record at the time of trial, the Court's assessment of the credibility of the witnesses, and the court's consideration of the arguments of counsel as set forth in their respective trial briefs, the Court makes the following findings of fact:
1. On August 30, 1990, the parties entered into a written contract for the sale, by the Defendants, and the purchase, by the Plaintiff of the premises known as 19 Hundred Acres Road, Newtown, Connecticut.
2. The said contract was executed on behalf of the Plaintiff by the Plaintiff's sister, Eva M. Mulholland, as attorney-in-fact.
3. Said Contract included a provision requiring the "Seller to correct high radon reading to reduce said reading to .4 pCi/L or lower". Said Contract provision did not specify whether the radon reading to be reduced was an airborne radon or a waterborne radon. Said Contract provision did not specify a date by which the radon condition was to be "corrected".
4. The Defendants at their sole expense did engage a radon mitigation contractor for the purposes of mitigation to an acceptable level of the airborne radon in the premises. Said mitigation work was completed prior to the closing of title and was paid for by the Defendants.
5. The Plaintiff did not attend the closing of title on October 17, 1990. The Plaintiff was instead represented by her said attorney-in-fact, Eva Mulholland, at the said closing of title.
6. The said Eva Mulholland was not available to testify and did not testify at the trial of this matter.
7. No credible evidence has been offered by the Plaintiff to substantiate the claim made by the Plaintiff in her Amended Complaint that the Defendants, at the closing of title, delivered CT Page 5944 to the said Eva Mulholland, a copy of the "radon test for radon in the air but withheld the tests for radon in the water".
8. The testimony of Steve Nicolosi of Buzzano Contracting, the radon reduction contractor, with respect to the delivery of waterborne radon test results to the Defendants is not persuasive. Mr. Nicolosi was unable to testify from his direct knowledge as to whether the test results showing the high level of radon in the water were in fact delivered to the Defendant. Rather, the testimony of Mr. Nicolosi was that the test results for the airborne radon levels were sent to the Defendants separate and apart from the test results for the waterborne radon. He further testified that it is his office procedure that the test results for the waterborne radon level would thereafter have been sent to the homeowner. No records were offered though that would substantiate the plaintiff's claim that the test results for the waterborne radon were ever delivered to the defendants.
9. The Plaintiff has failed to provide the Court with any credible evidence to support her claim that the Defendants, at the time of closing of title, were aware of any radon problem beyond the radon problem that the Defendants willingly remedied prior to the closing of title. Specifically, the Plaintiff has failed to provide the Court with any credible evidence to support her claim that the Defendants ever possessed or withheld at the time of closing the test results that showed a high level of radon in the water, or that the Defendants ". . . wantonly and maliciously withheld a material fact from the Plaintiff, namely, the unusually high amount of radon in the water".
10. The Court further finds credible and persuasive the testimony of the Defendant, Mr. Basile, to the effect that he never received any test results for waterborne radon, that he was unaware that the water had been tested for radon and that he was never under the impression that he was required to mitigate the claimed waterborne radon problem under the terms of the Contract.
The Defendant has failed to meet her burden of proof on both Counts of the Complaint in this matter. Accordingly, judgment may enter for the Defendants on Count One and Two of the Complaint.
BY THE COURT
CARROLL, J.
CT Page 5945